UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
\_\_\_\_\_

DUJUAN LANARD QUINN,

        Plaintiff,                  Case No. 1:20-cv-774

v.                                         Honorable Paul L. Maloney

GRETCHEN WHITMER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff is serving a string of consecutive and concurrent sentences imposed by the Muskegon

County Circuit Court following his guilty and *nolo contendere* pleas in three separate criminal proceedings. Of particular significance to Plaintiff's claims are concurrent sentences of 25 to 75 years imposed by the court on February 19, 2008, for carjacking and failing to stop at the scene of an accident that resulted in serious impairment or death. The court imposed those sentences upon Plaintiff as a fourth habitual offender, Mich. Comp. Laws § 769.12. The MDOC reports that considering all of Plaintiff's sentences, his earliest release date is February 18, 2033, and his maximum discharge date is May 30, 2104. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=442411 (visited Sept. 5, 2020). Plaintiff sues Michigan Governor Gretchen Whitmer, MDOC Director Heidi Washington, and Parole Board Chairman Michael Eagen.

There are several consequences that flow from the fourth habitual offender enhancement in Plaintiff's case. Section 769.12 of the Michigan Compiled Laws provides:

> (1) If a person has been convicted of any combination of 3 or more felonies . . . upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:
>
> > (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years.

Mich. Comp. Laws § 769.12(1).[1] Thus, it appears that Plaintiff's 25-year minimum sentence was statutorily mandated. Moreover, the statute further provides:

> (4) An offender sentenced under this section . . . is not eligible for parole until expiration of the following:
>
> > (a) For a prisoner other than a prisoner subject to disciplinary time, the minimum term fixed by the sentencing judge at the time of sentence unless

---

[1] Plaintiff's June 1, 2004 judgment of sentence for delivery or manufacture of a controlled substance, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv), is a "listed prior felony." Mich. Comp. Laws § 769.12(6)(a)(ii). And, Plaintiff's carjacking conviction, in violation of Mich. Comp. Laws § 750.529a is a "serious crime." Mich. Comp. Laws § 769.12(6)(c).

2

>the sentencing judge or a successor gives written approval for parole at an earlier date authorized by law.
>
>(b) For a prisoner subject to disciplinary time, the minimum term fixed by the sentencing judge.

Mich. Comp. Laws § 769.12(4).[2] Thus, Plaintiff is not eligible for parole until he has served his 25-year minimum sentence.[3] If, on the other hand, Plaintiff had been sentenced to imprisonment for life, he might be eligible for parole after serving 15 years of that sentence. Mich. Comp. Laws § 791.234(7).[4]

Plaintiff alleges that Michigan's statutes regarding parole deny him due process, equal protection, and have the effect of imposing a cruel and unusual punishment upon him because he must serve his 25-year minimum sentence before being considered for parole, while a person sentenced to life imprisonment could receive a parole interview after serving 10 or 15 years.

Plaintiff seeks a declaration that Defendants have denied Plaintiff his Fourteenth Amendment equal protection rights; a monetary award to cover the expenses of litigation, and injunctive relief compelling Defendants to cease enforcing the purportedly unconstitutional parole statute and compelling Defendants to make Plaintiff parole eligible after serving 10 years.

---

[2] A prisoner like Plaintiff, who is serving an indeterminate sentence for a listed offense, such as carjacking, committed on or after December 15, 1998, is a prisoner subject to disciplinary time. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

[3] Even if Plaintiff were not a fourth habitual offender, another statutory section would prevent his eligibility for parole until he had served his minimum sentence. *See* Mich. Comp. Laws § 791.234(2) ("[A] prisoner subject to disciplinary time sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted."); Mich. Comp. Laws § 791.233(1)(d) ("[A] parole must not be granted to a prisoner subject to disciplinary time until the prisoner has served the minimum term imposed by the court..").

[4] Not every life sentence permits parole. *See* Mich. Comp. Laws § 791.234(6). Prisoners sentenced to life imprisonment without parole must rely on the reprieve, commutation, and pardon process to be released. Mich. Comp. Laws § 791.244.

In an amendment to his complaint (ECF No. 7), Plaintiff notes that this is not the first time he raised these claims. Plaintiff filed a complaint raising the same claims and naming as defendants the State of Michigan and Governor Gretchen Whitmer in the Michigan Court of Claims on April 17, 2019. *See Quinn v. State of Michigan et al.*, No. 81157 (Mich. Ct. Cl.), Register of Actions, available at https://webinquiry.courts.michigan.gov/WISearchResults/ViewPage1?commoncaseid=811517 (visited Sept. 5, 2020). By opinion and order issued July 8, 2019, the Michigan Court of Claims granted defendants' motion to dismiss the complaint. *Id*. Petitioner promptly appealed that decision to the Michigan Court of Appeals. The appellate court heard oral argument last week. *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=350235&CourtType_CaseNumber=2 (visited Sept. 5, 2020).

## II.     The *Rooker-Feldman* doctrine

This Court's jurisdiction to adjudicate appeals from or collateral attacks on state-court rulings is limited. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). The "*Rooker-Feldman*" doctrine is based on 28 U.S.C. § 1257(a). The statute is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision. To accomplish this, the statute states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." 28 U.S.C. § 1257(a). "The *Rooker-Feldman* doctrine . . . is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts." *Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010).

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005), the Supreme Court emphasized the narrow scope of the *Rooker-Feldman* doctrine, stating:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284. In the wake of *Exxon*, the Sixth Circuit has tightened the scope of *Rooker-Feldman*. *See, e.g., Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006) ("*Rooker Feldman* is a doctrine with only limited application."). The Sixth Circuit has distinguished between plaintiffs who bring an impermissible attack on a state court judgment, for which *Rooker-Feldman* applies, and plaintiffs who assert independent claims before the district court, for which *Rooker-Feldman* does not apply. *See, e.g., Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285 (6th Cir. 2007); *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432, 436-37 (6th Cir. 2006).

Since *Exxon*, the Sixth Circuit has held that the pertinent inquiry is the "source of the injury" upon which the plaintiff bases his federal claim:

> The inquiry [focuses on] the *source of the injury* the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick*, 451 F.3d at 393 (emphasis added); *see also Coles*, 448 F.3d at 858 (noting that we "have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself").

In Plaintiff's case, it is not the judgment of the state court that is the source of his injury, it is the Defendants' enforcement of the purportedly unconstitutional parole statutes. Based

5

on that reasoning, *Rooker-Feldman* should pose no bar to Plaintiff's suit in federal court. On the other hand, if the purpose of the doctrine is to preserve the Supreme Court's jurisdiction to affirm or reverse the state court's decision, it is difficult to imagine how this Court can consider Plaintiff's claims without encroaching on that jurisdiction.

The Sixth Circuit's most recent published consideration of the doctrine in *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020)—specifically the concurring opinion of Circuit Judge Sutton—provides a compelling analysis of the doctrine's history and ongoing difficulties in applying the doctrine. Judge Sutton's closing advice to the lower federal courts guides this Court's application of the doctrine here:

> Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it. The Court, I suspect, never will, and that's all we lower court judges should need to know.

*VanderKodde*, 951 F.3d at 409 (J. Sutton concurring). Because it appears that Plaintiff's injury finds its source in the actions of the Defendants, and not the state court's judgment upholding those actions, the Court concludes that the *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction to consider Plaintiff's claims.

**III.   Res judicata**

The doctrine of *res judicata*, also called claim preclusion, means a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). *Res judicata* has four elements: (1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) there must be identity of parties; and (4) that the same cause of action must be involved in both suits (identity

6

of causes of action). *Nagle v. Lee*, 807 F.2d 435, 439 (5th Cir. 1987), and the authority therein cited. Furthermore, *res judicata* bars all claims that were or could have been advanced in support of the plaintiff's cause, not merely those which were adjudicated. *Ocean Drilling & Expl. Co., Inc. v. Mont Boat Rental Servs.*, 799 F.2d 213, 217 (5th Cir. 1986); *Jennings v. Caddo Parish Sch. Bd.*, 531 F.2d 1331 (5th Cir. 1976). The doctrine dictates that there be an end to litigation. It further mandates that those who have contested an issue be bound by the results of the contest. *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). Even an erroneous conclusion reached by a court in an original action does not deprive a defendant in a subsequent action of the right to rely on the plea of *res judicata*. *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927). It is direct review by appeal, not the filing of new complaints concerning the same issues, that corrects any erroneous conclusions a court might make. *Equitable Trust Co. v. Commodity Futures Trading Comm'n*, 669 F.2d 269 (5th Cir. 1982). In that sense, the doctrine of *res judicata* also plays a role in preserving the United States Supreme Court's jurisdiction under § 1257.

In *Fieger v. Corrigan*, 602 F.3d 775 (6th Cir. 2010), the Sixth Circuit noted that formal application of the *res judicata* doctrine was inappropriate where the underlying judgment was on appeal. *Id*. at 777; *but see Brotherhood Mut. Ins. Co. v. Delauter,* No. 96-2399, 1998 WL 432482, at *2 (6th Cir. Jul. 17, 1998) ("A judgment is final [in Michigan] even though it is subject to nullification through a motion for a new trial, by reversal on appeal, or by similar post-judgment outcomes."); *In re Kramer*, 543 B.R. 551, 556 (E.D. Mich. 2015) ("[I]n Michigan, judgments on appeal are final for purposes of *res judicata* . . . . "). Therefore, the Court concludes that application of the doctrine of *res judicata* to dismiss Plaintiff's claims is inappropriate at this time. The Court will address Plaintiff's claims on the merits.

## IV. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

8

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**V.      Due process**

Plaintiff contends that Defendants refusal to consider him for parole is a denial of due process. On its face, that contention would appear to be a challenge to the fact of Plaintiff's confinement; however, it is not.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 494 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis in original).

But, Plaintiff does not seek release from prison; rather, he requests parole consideration. As a consequence, under *Wilkinson*, his success in the action would not necessarily demonstrate the invalidity of his continued confinement, so his action does not appear to be *Heck*-barred. Nevertheless, for the reasons set forth below, assuming that Plaintiff's due process claim is cognizable under § 1983, it fails to state a claim.

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see*

*also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 25-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

## VI.     Equal protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604

(6th Cir. 1998). Prisoners serving indeterminate sentences with long minimum terms are not a suspect class either. Moreover, as noted above, prisoners do not have a fundamental right to parole.

Because Plaintiff does not claim that the offending statutes target a suspect class and he does not the statutes burden a fundamental right, the only remaining type of equal protection claim is that the statutes intentionally treat one person differently than others similarly situated without any rational basis for the difference. That type of claim is typically described as a "class of one" claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[5]

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Although Plaintiff's allegations suffice to demonstrate disparate treatment, he fails to allege facts that support the inference that those who were treated differently were similarly

---

[5] Although the type of claim is described as a "class of one" claim, that does not necessarily mean that only one person is affected by the government action. The number of people affected "is immaterial for equal protection analysis." *Village of Willowbrook*, 528 U.S. at 564, fn*.

12

situated in all relevant respects. *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("'Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Considering whether prisoners sentenced to "parolable" life imprisonment—the comparators—are similarly situated to prisoners sentenced to indeterminate terms with long minimums—Plaintiff—reveals the flaw in Plaintiff's equal protection argument. The Michigan courts have recognized that a sentence to life imprisonment is fundamentally different than a sentence to an indeterminate term with a long minimum; but, the Michigan courts have wavered as to which sentence is "better" from the perspective of the prisoner. *See, e.g., People v. Carson*, 560 N.W. 2d 657, 658-59 (Mich. Ct. App. 1996) (court discussed Michigan authorities holding that a prisoner might be better off with a sentence of parolable life and holding that a parolable life sentence is necessarily more severe than a term-of-years sentence). The indeterminate term offers the possibility of serving no more than the minimum, but it also requires serving no less. The life sentence offers the possibility of parole consideration after serving only 15 years, but the parole procedure for "lifers" is more difficult than the procedure for prisoners serving an indeterminate term, and the likelihood of a lifer being released on parole is, reportedly, significantly less. *Id*. at

13

658-63.[6]  In the end, the *Carson* court concluded that a sentence of parolable life is not invariably a greater penalty than a sentence of a term of years; it is simply different than a sentence of a term of years.  *Id*. at 662.  It is the fact that the sentences are recognized as fundamentally different that precludes a determination that a prisoner serving a life sentence is "similarly situated" to a person serving an indeterminate sentence with a long minimum.  *Jakaj*, 2013 WL 782596, at *3.

Moreover, there is a rational basis for the difference; it follows from opposing currents in sentencing policy, or as the Carson court described it, it follows from "the interplay between the lifer law and Proposal B."  *Carson*, 560 N.W.2d at 662.  With regard to parole for lifers, in the nineteenth century, a life sentence meant life imprisonment; parole was not an option.  *See People v. Cummings*, 50 N.W. 310, 311 (Mich. 1891) ("[E]very sentence . . . except of a person sentenced for life . . . may be terminated by the board as authorized by this act . . . .").  By 1941, however, the legislature hds provided parole consideration for lifers who had served 10 calendar years unless the sentence was imposed for first-degree murder.  *See People v. Fox*, 20 N.W.2d 732, 733 (Mich. 1945) (citing the statute amended in 1941.)  The purpose of parole for a "lifer" is no different than for any other prisoner:

> The purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison inclosure so that he may have an opportunity to show that he can refrain from committing a crime.  It is a conditional release; the condition being that, if he makes good, he will receive an absolute discharge from the balance of his sentence; but, if he does not make good, he will be returned to serve his unexpired time.

---

[6] It is noteworthy that just a few years ago, a Michigan "lifer" filed an equal protection claim based on the disparity in treatment between "lifers" and prisoners serving long indeterminate sentences because the former "are not entitled to an interview or written explanation of the parole board's decision after the tenth year interview, while [the latter] may not be denied parole without an interview and written explanation for the denial of parole."  *See Jakaj v. Combes*, No. 2-12-cv-475, 2013 WL 782596, at *3 (W.D. Mich. Mar. 1, 2013).  Perhaps the grass is always greener on the other side of the fence.

*In re Eddinger*, 211 N.W. 54 (Mich. 1926); *see also People v. Holder*, 767 N.W.2d 423, 427 (Mich. 2009) ("[T]his Court's opinion in *In re Eddinger* remain viable and instructive.") (footnote omitted). Plaintiff does not suggest that this purpose is irrational. Instead, he focuses on the purpose of requiring prisoners serving indeterminate sentences to serve the minimum term before becoming parole eligible.

With regard to withholding parole eligibility until the minimum term of an indeterminate sentence is complete—the opposing current—the underlying purpose is to prevent early release—to keep prisoners incarcerated for the minimum term imposed by the sentencing judge. *People v. Moore*, 439 N.W. 2d 684, 699 (Mich. 1989) (J. Boyle, dissenting). The requirement that prisoners serving indeterminate sentences not become parole eligible until the prisoner has served his minimum term is the product of a 1978 ballot proposal known as Proposal B. Plaintiff suggests that the purposes of lifer parole eligibility and Proposal B are inconsistent. It is certainly difficult to argue that they are consistent. Indeed, the Michigan courts wrestled with whether Proposal B effectively eliminated the lifer law. Ultimately, however, in a split decision, the Michigan Supreme Court concluded that Proposal B did not affect the lifer law. *People v. Johnson*, 364 N.W.2d 654 (Mich. 1984). Despite the inconsistency that remains, both provisions have a rational basis.

Plaintiff suggests that some part of the unfairness in the disparate treatment here is that he has committed a lesser crime than those sentenced to parolable life. That is not the case for two reasons. First, it is not at all clear that a life sentence is better or worse than an indeterminate sentence with a long minimum term. As noted above, each sentence has advantages in certain circumstances. Second, as a matter of fact, Plaintiff is wrong when he claims that his crimes are somehow "lesser" than crimes that permit a parolable life sentence. As a fourth habitual

offender, the trial court was free to sentence Plaintiff to life or any term of years—as constrained by the statutory mandatory minimum. Thus, his crimes are not "lesser" than other crimes that permit a parolable life sentence. Either because lifers are not similarly situated to Plaintiff or because the statutes at issue are both supported by a rational basis, the Defendants' roles in applying those statutes do not implicate Petitioner's equal protection rights.

Finally, it was not the Defendants who put Plaintiff in one category or the other. It was the trial judge's choice to sentence Plaintiff to an indeterminate sentence with a long minimum term. To the extent that Plaintiff seeks to challenge the judge's imposition of his sentence, his claim must be brought in a habeas corpus action. *Preiser*, 411 U.S. at 484, 494.

For all these reasons, Plaintiff has failed to state a claim for violation of his equal protection rights.

## VII.  Cruel and unusual punishment

Finally, Plaintiff suggests that because he is not parole eligible as soon as a prisoner serving a parolable life sentence, that his sentence is cruel and ususual. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d

60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Plaintiff was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Therefore, neither Plaintiff's sentence nor the period of time he must serve before becoming parole eligible, presents the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  September 9, 2020              /s/ Paul L. Maloney
                                                                                          Paul L. Maloney
                                                                                          United States District Judge